DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION.
{¶ 1} Relator, Billy Duncan, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying him permanent total disability compensation and to enter an order granting him said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision the magistrate concluded: (1) the commission did not abuse its discretion in failing to explain why it did not rely on the reports of Drs. Gomos and Rao; (2) Dr. Rosenberg's report is some evidence on which the commission may rely; (3) the commission did not abuse its discretion in failing to consider relator's preexisting pulmonary disorder under the allowed conditions of the claim; and (4) the commission did not violate State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203 in its treatment of relator's non-medical factors. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, largely rearguing those matters adequately addressed in the decision.
 {¶ 4} Specifically, relator first objects to the magistrate's conclusion that the commission did not abuse its discretion in failing to explain why it did not rely on the reports of Drs. Rao and Gomos. As the magistrate properly noted, however, long-established Ohio Supreme Court case law states the commission is not required to set forth the reasons for finding one report more persuasive than another. See, e.g., State exrel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577-578. The Ohio Administrative Code provisions relator cites in his objections do nothing to undermine the case law the magistrate cited.
 {¶ 5} Relator's second objection contests the magistrate's conclusion that Dr. Rosenberg's report constitutes some evidence on which the commission may rely. As the magistrate properly observed, relator's argument "asks this court to second-guess the medical expertise of Dr. Rosenberg which this court should decline to do." (Magistrate's Decision, ¶ 31, citing State exrel. Young v. Indus. Comm. [1997], 79 Ohio St.3d 484, 487.)
 {¶ 6} Relator's third objection asserts the commission's order violates the provisions of Noll, "based upon the total lack of explanation and independent analysis contained in the [staff hearing officer's] order for the Commission." (Relator's Objections, 3.) For the reasons set forth in the magistrate's decision, relator's contentions are unpersuasive; the staff hearing officer's order minimally complies with Noll.
 {¶ 7} Lastly, relator contends the commission erred in failing to grant relief pursuant to State ex rel. Gay v. Mihm
(1994), 68 Ohio St.3d 315. The commission properly notes that under State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461, a prerequisite to consideration of Gay relief is a finding that the requirements of Noll have not been met. Because the commission's order here complies with the basic requirements of Noll, Gay relief is inappropriate.
 {¶ 8} For the foregoing reasons, relator's four objections are overruled.
 {¶ 9} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Klatt and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Billy Duncan, : Relator, : v. : No. 03AP-1234 Administrator, Ohio Bureau of Workers' : (REGULAR CALENDAR) Comp., Industrial Commission of Ohio : and Forest City Foundry, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 18, 2004 Geraci LaPerna Co., L.P.A., and Terry Jennrich, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} In this original action, relator, Billy Duncan, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting him said compensation.
Findings of Fact:
 {¶ 11} 1. Relator has an industrial claim which arose out of his employment as a laborer for respondent Forest City Foundry, a state-fund employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "respiratory condition: external agent nos [not otherwise specified]; asbestosis, silicosis," and is assigned claim number 95-524956.
 {¶ 12} 2. The record contains a report dated September 10, 2001, authored by David M. Weiner, M.D., who specializes in pulmonary medicine. Dr. Weiner's September 10, 2001 report was written in response to a letter from the Ohio Bureau of Workers' Compensation. Dr. Weiner's report states:
My response to the questions asked in your letter is as follows.
[One] The medical evidence attached does support the alleged diagnosis as a direct and proximate result of the alleged industrial injury/exposure.
[Two] The medical evidence and examination of the worker do support the possible relationship between the alleged injury and description of the accident/exposure reported by the worker in his claim. However, it should be noted that this patient suffers from various types of lung disease including silicosis which was no doubt obtained by working in the foundry with a lesser likelihood of asbestosis.
It should be noted that the patients [sic] functional disability is in great degree due to his inveterate cigarette smoking which he continued to do through the date of my examination 5/3/01. His total pack year smoking was in excess of 20 years, and resulted in the severe obstructive ventilatory defect seen on pulmonary function tests in 1998 and in 1999. [Three] The alleged condition did not seem to predate the injury date provided by the employee.
* * *
The patient at the time that I saw him was a 60 year old white male whose smoking history is as detailed above. Patient worked for twenty two years at Forest City Foundry as a chipper and grinder of silica dust. Asbestos exposure is difficult to ascertain.
At the time that I saw him, he stated that he could not walk very far largely because of his COPD. Medications at the time of the visit included Advair 100/50, Theophylline 300mg bid, and Proventil tablets 4mg bid.
* * *
Physical examination included regular blood pressure of 126/64 heart rate 60, weight 150 lbs., and respiratory rate 20-24 breaths per minute. No use of exertional breathing was seen at the time. The chest was clear with decreased breath sounds bilaterally. The remaining examination of the heart and abdomen were unremarkable. There was no clubbing, cyanosis, or edema of the extremities.
I present my conclusions regarding the patients [sic] disability. Certainly occupational disease should be noted because of the patients [sic] extensive silicosis dating back a number of years. The asbestos claim is difficult to substantiate because of a lack of clear exposure. The patients [sic] COPD remains the cardinal reason for the patients [sic] current clinical condition.
Finally, the patients [sic] medical condition does prevent him from returning to his former position of employment but this is not based on silicosis but rather on COPD secondary to extensive cigarette smoking.
 {¶ 13} 3. The record contains another report from Dr. Weiner dated October 1, 2001. The one sentence report states: "In my opinion, the evidence for asbestos found is in fact a direct result of the exposure to this inhaled substance."
 {¶ 14} 4. On June 21, 2002, relator filed an application for PTD compensation. On his PTD application, relator indicated that he worked as a "basic laborer, sander, chipper/grinder," at Forest City Foundry from 1962 to 1983. He also worked as a "gas station attendant" from 1983 to 1990. He worked in a junk yard from 1990 to June 1993.
 {¶ 15} Under the "education" section of the application, relator stated that the seventh grade was the highest grade of school he has completed and this occurred in 1955. He has not obtained a certificate for passing the General Educational Development ("GED") test. The PTD application asks the applicant: (1) "Can you read?"; (2) "Can you write?"; and (3) "Can you do basic math?" Given a choice of "yes," "no," or "not well," relator selected the "not well" response for all three queries.
 {¶ 16} 5. In support of the PTD application, relator submitted a report dated January 25, 2001, from L.C. Rao, M.D., who is board certified in internal medicine and pulmonary disease. Dr. Rao's January 25, 2001 report indicates that he examined relator on January 16, 2001. Dr. Rao reviewed the medical history, pulmonary function tests, and chest radiographs. Dr. Rao wrote:
In summary, the chest x-ray findings are consistent with the diagnosis of silicosis with calcified pneumoconiotic nodule and calcification of hilar lymph glands. In addition, there is evidence of early interstital fibrosis due to asbestosis and chronic obstructive pulmonary disease.
I did review the report of Dr. Peter Gomus [sic], who agrees with the diagnosis of the occupational pneumoconiosissilicosis. I did review the report from Dr. Patil which is related to the patient's history of asbestos related lung disease. The multiple chest x-ray reports from radiologists Dr. Sykora, Dr. Mendoza, Dr. Anne Singer, and the CT scan reports from Dr. Paul Grooff, all agree with the findings of the multiple bilateral pulmonary parenchymal nodules with calcification. They did suggest the possibility of a granulomatous disease, however this radiological appearance is consistent with silicosis too.
On the basis of the patient's significant occupational exposure to silica and asbestos dust, his chest radiographs, physical examination, the diagnosis of silicosis and added component of asbestosis has been established within a reasonable degree of medical certainty. In addition, the patient has evidence of chronic obstructive pulmonary disease, probably due to his history of smoking.
 {¶ 17} 6. The record contains a report dated June 10, 1996, from Peter D. Gomos, M.D., who examined relator at the request of relator's counsel. Apparently, this is the report from Dr. Gomos that Dr. Rao referenced in his January 25, 2001 report. The June 10, 1996 report of Dr. Gomos states:
He had a significant past history working in a dusty environment at Forest City Foundries Company from 1962 to 1983 and in a junkyard until 1993. He had not been able to work since June 1, 1993 up to the present and forever. He is totally and permanently disabled.
My initial impression was that he had Acute Exacerbations of a Chronic Obstructive Pulmonary Disease. His history, physical findings and xray findings are consistent of an occupational lung disease called Silicosis. This condition occurs in workers in numerous occupations including mining, quarrying, tunneling, stone cutting, sand-blasting and foundry work. The rate of development of clinical disease is dependent on the amount of inhaled silica. His occupational lung disease is consistent with Chronic Silicois [sic] in which exposure extends for more than 15 years before symptoms and xray changes occur. The xray findings show nodules which become calcified. The hilar lymph nodes are commonly enlarged and may developed [sic] calcifications. The clinical manifestations are cough, shortness of breath and recurrent infections. The pulmonary function as the disease progresses become restrictive, obstructive or mixed type of abnormality.
 {¶ 18} 7. On October 23, 2002, at the commission's request, relator was examined by David M. Rosenberg, M.D. Dr. Rosenberg reported:
On PHYSICAL EXAMINATION his blood pressure was 120/90 with a respiratory rate of 16 breaths/minute and unlabored and a pulse rate of 80 beats/minute and regular. His head, ears, eyes, nose and throat revealed no use of accessory muscles. He had markedly diminished breath sounds, without rales, rhonchi or wheezes. He had no murmurs, gallops or rubs, and his abdomen was benign, without masses or areas of tenderness. He had no edema, cyanosis or clubbing. Pulmonary function tests were performed with totally incomplete efforts with respect to spirometry. This was verified by the shape of the flow volume curve, as well as the shape of the volume time curves and observations made by the respiratory technician. In addition, the diffusing capacity measurement was performed such that the values could not be used to assess impairment. The effort independent TGV which measures the resting volume of the lung, was increased at 168% predicted. Also, despite his incomplete efforts on the vital capacity maneuver, his TLC was 109.9% predicted with an RV/TLC of 208% predicted. Additionally, his percent saturation and carboxyhemoglobin levels were normal. His EKG revealed low voltage with some nonspecific T wave changes. Finally, Mr. Duncan's chest Xray was reviewed; it demonstrated granulomatous changes without interstitial fibrosis.
* * *
In SUMMARY, Mr. Duncan is a gentleman with a long smoking history. He worked at Forest City Foundry in the past and had silica exposure, with possible exposure to asbestos. He reports marked shortness of breath, and stopped smoking 4 months ago. Pulmonary function tests in the records performed with good effort, demonstrated severe obstruction with a reduced FVC. At the time of my examination he had markedly diminished breath sounds, with a chest X-ray revealing granulomatous changes; his pulmonary function tests, which were performed with incomplete efforts with respect to spirometry, revealed a normal TLC and evidence of air trapping. Also, he did not perform the diffusing capacity measurement adequately.
DISCUSSION: Based on a review of the above information, based on the allowed conditions, one can appreciate that Mr. Duncan's actual TLC is normal. This is despite his incomplete efforts given on the performance of the FVC maneuver. This is in contrast to what was stated in the records, Mr. Duncan does not have restriction; the previous diagnosis of restriction was based simply on the FVC measurement, without performing a TLC maneuver. Since his current TLC was normal, he does not have restriction. Obviously, in the setting of severe obstruction, air trapping can cause a reduced FVC; clearly, this is what caused his 1999 pulmonary function tests to be interpreted as demonstrating "restriction". Mr. Duncan's main physiologic abnormality, is that of severe airflow obstruction. This conclusion is consistent with the examination findings which revealed markedly diminished breath sounds. If he had performed the spirometry portion of the pulmonary function tests at the time of my evaluation with adequate effort, undoubtedly, it would have demonstrated severe obstruction, as it did in 1999. One should appreciate, that silicosis in the absence of complicated disease, does not cause clinically apparent chronic obstructive pulmonary disease. Similarly, clinically significant chronic obstructive pulmonary disease does not occur in association with the development of asbestosis. Undoubtedly, Mr. Duncan's severe physiologic impairments and limitations relate to smoking caused chronic obstructive pulmonary disease (COPD), and not a pneumoconiosis. While he is severely impaired and cannot perform his previous employment or any form of remunerative employment, his impairments and resultant disability relate to his cigarette smoking induced lung disease and not a dust-related pulmonary disease.
In CONCLUSION, it can be stated with a reasonable degree of medical certainty, that Mr. Duncan's impairments for the allowed conditions is 0%. His severe impairments relate to smoking-related chronic obstructive lung disease (COPD). He obviously cannot perform any form of remunerative employment secondary to this COPD. However, for the allowed conditions, he has no resulted impairment, and is maximally improved. If you have any questions, please feel free to contact me.
(Emphasis sic.)
 {¶ 19} 8. Dr. Rosenberg completed a physical strength rating form on which he indicated that relator is medically able to perform "Medium Work" based solely upon the allowed conditions of the industrial claim.
 {¶ 20} 9. In further support of his PTD application, relator submitted another report from Dr. Rao, dated December 15, 2002. This report is apparently in response to a letter from relator's counsel. Dr. Rao's December 15, 2002 report states: You are raising a question of what percentage of Mr. Duncan's disability is due to his past smoking versus his asbestos and/or silicosis exposure at Forest City Foundry from 1961 to 1983 as a laborer and inspector in the core room, sanding and grinding metal parts.
I have reviewed the pulmonary function studies done at University Hospital which showed an FVC of 1.47, which is 39% of predicted, and an FEV1 of .91, which is 30% of predicted. However, it is interesting to see his FEV1/FVC ratio is 86% of predicted. The presence of a normal FEV1/FVC ratio is indicative of restriction which is seen in the case of silicosis and asbestosis. His body-plethysmography showed normal airway resistance. His total lung capacity was 6.5 liters, which is 109% of predicted. If he had a severe obstructive ventilatory impairment one would have expected to see his total lung capacity to be markedly elevated. In his case the total lung capacity was almost near normal in spite of the evidence of chronic obstructive lung disease suggesting that he has an added component of restriction due to silicosis and asbestosis. It is very difficult to quantify how much of his disability is due to restriction and how much is due to obstruction. I would like to point out if there is a mixed component of restriction and obstruction, with the restriction being due to silicosis and asbestosis and the obstruction being due to his history of smoking. According to American Medical Association Guidelines, (5th Edition), page 107, table 5-12, Mr. Duncan has Pulmonary Impairment Class IV, which is 51 to 100% impairment of the whole person.
 {¶ 21} 10. The commission requested an employability assessment report from Jennifer J. Stoeckel, Ph.D., who is a vocational expert. The Stoeckel report, dated December 18, 2002, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
 {¶ 22} Indicating acceptance of Dr. Rosenberg's reports, Stoeckel responded to the above query with the following statement regarding "employment options": 0% impairment related to work injury. Can perform at the medium range of work such as machine operation, delivery driver, assembly, gas station attendant, gas station mechanic, etc. Notes unemployable, however, due to unrelated medical condition.
Under "III. Effects of Other Employability Factors," Stoeckel rote:
[One] Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
Answer: Age: The claimant's age would pose a moderate impairment to re-employment particularly the ability to compete with younger workers and acquire new work skills.
Education: The claimant has a limited 7th grade education although education should be sufficient for most entry level positions. Claimant reports he cannot read, write, or perform basic math well although this is not documented by formal testing in the records.
Work History: The claimant has worked as a gas station mechanic indicating the ability to acquire some technical skills. Otherwise, claimant has worked predominately in low semi-skilled and unskilled positions without transferable skills. Claimant indicates that he was a supervisor "boss" at a salvage yard indicating some supervisory skills.
* * *
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: While the claimant's education is limited and he reports educational deficits, education should be sufficient for entry level positions and/or moderate remediation.
[Three] Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: Medical records suggest claimant is unemployable, however, described disability related to COPD secondary to cigarette smoking verses the allowed conditions. The claimant is an older individual with limited 7th grade education who has not been gainfully employed in several years. Similarly, claimant is receiving SSDI benefits which may act as a disincentive to return to gainful employment.
Under "IV Employability Assessment Database," Stoeckel wrote:
B. WORK HISTORY:
JOB * * * SKILL STRENGTH DATES TITLE LEVEL LEVEL
Salvage * * * semi-skilled medium [1990-93] Laborer
Gas Station * * * semi-skilled medium [1983-90] Att.
Gas Station * * * semi-skilled medium [1983-90] Mech.
Laborer * * * semi-skilled heavy [1962-83] (Chipper/Grinder)
C. EDUCATIONAL HISTORY:
Highest Grade Completed: 7th
Date of last attendance: 1955 H.S. Graduate: No GED: No Vocational training: None reported ICO Educational Classification: Limited
 {¶ 23} 11. Following a February 12, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
All the reports were reviewed and evaluated. This order is based particularly upon the reports of Dr. Rosenberg, Dr. Weiner, and Ms. Stoeckel.
On 10/23/2002 Dr. David Rosenberg, an Industrial Commission pulmonary specialist, conducted an examination of Injured Worker's industrial injuries. Dr. Rosenberg's examination revealed that Injured Worker had a 40-45 year history of cigarette smoking that ceased approximately four months prior to the examination. He related that:
"Based on a review of the above information, based on the allowed conditions, one can appreciate that Mr. Duncan's actual TLC is normal. This is despite his incomplete efforts given on the performance of the FVC maneuver. This is in contrast to what was stated in the records. Mr. Duncan does not have restrictions; the previous diagnosis of restriction was based simply on the FVC measurement, without performing a TLC maneuver. Since his current TLC was normal, he does not have restriction. Obviously, in the setting of severe obstruction, air trapping can cause a reduced FVC; clearly, this is what caused his 1999 pulmonary function tests to be interpreted as demonstrating "restriction". Mr. Duncan's main physiologic abnormality, is that of sever airflow obstruction. This conclusion is consistent with the examination findings which revealed markedly diminished breath sounds. If he had performed the spirometry portion of the pulmonary function tests at the time of my evaluation with adequate effort, undoubtedly, it would have demonstrated severe obstruction, as it did in 1999. One should appreciate, that silicosis in the absence of complicated disease, does not cause clinically apparent chronic obstructive pulmonary disease. Similarly, clinically significant chronic obstructive pulmonary disease does not occur in association with the development of asbestosis. Undoubtedly, Mr. Duncan's severe physiologic impairments and limitations relate to smoking caused chronic obstructive pulmonary disease (COPD), and not a pneumoconiosis. While he is severely impaired and cannot perform his previous employment or any form of remunerative employment, his impairments and resultant disability relate to his cigarette smoking induced lung disease and not a dust related pulmonary disease.
In CONCLUSION, it can be stated with a reasonable degree of medical certainty, that Mr. Duncan's impairments for the allowed conditions is 0%. His severe impairments relate to smoking related chronic obstructive lung disease (COPD). He obviously cannot perform any form of remunerative employment secondary to this COPD. However, for the allowed conditions, he has no resulted impairment, and is maximally improved. . . ." Dr. Rosenberg opined that Injured Worker was physically capable of medium work activity.
Dr. David Weiner, a BWC pulmonary specialist, completed his report on Injured Worker's industrial injury, on 09/10/2001. Dr. Weiner, reported that Injured Worker's "medical condition does prevent him from returning to his former position of employment but this is not based on silicosis but rather on COPD secondary to extensive cigarette smoking."
A vocational counselor for the Industrial Commission, Jennifer Stoeckel, completed an employability assessment on 12/18/2002. Ms. Stoeckel determined that:
"The claimant's age would pose a moderate impairment to reemployment particularly the ability to compete with younger workers and acquire new work skills.
"The claimant has a limited 7th grade education although education should be sufficient for most entry level positions. Claimant reports he cannot read, write, or perform basic math well although this is not documented by formal testing in the records.
"The claimant has worked as a gas station mechanic indicating the ability to acquire some technical skills. Otherwise, claimant has worked predominately in low semiskilled and unskilled positions without transferable skills. Claimant indicates that he was a supervisor "boss" at a salvage yard indicating some supervisory skills.
"Per the Statement of Facts, claimant was told by doctors to stay out of the sun, avoid cold weather, limited walking distance and standing. Is reportedly unable to perform household chores or yard work. Medications unknown. Receives Social [Security] Disability benefits in the amount of $1,040.00 per month beginning in 1995. Reports he is physically disabled from participating in rehabilitation."
In addition, she reported that:
"Medical records suggest claimant is unemployable, however, described disability related to COPD secondary to cigarette smoking verses the allowed conditions. The claimant is an older individual with limited 7th grade education who has not been gainfully employed in several years. Similarly, claimant is receiving Social Security Disability Income benefits which may act as a disincentive to return to gainful employment."
Injured Worker is a 61-year old male who has not worked since 06/01/1993; he was 52-years of age at that time. His work experience includes being a laborer and a gas station attendant. He did complete the 7th grade but did not obtain a GED; there is not any special training. His medical history is not significant for surgeries for the industrial injury but is significant for the unrelated condition of COPD. He is currently receiving Social Security Disability.
Based on the preponderance of the evidence the Staff Hearing Officer finds that Injured Worker is capable of competing in the labor market. The IC pulmonologist opined that Injured Worker is severely impaired but not from allowed condition in this claim. The BWC pulmonologist concurred. The IC vocational counselor determined that Injured Worker did have barriers to re-employment but indicated that the caused [sic] for the inability to be employed was the unrelated condition of COPD.
It is the finding of the Staff Hearing Officer that Injured Worker's conditions have become permanent and have reached maximum medical improvement. The Staff Hearing Officer further finds that Injured Worker cannot return to former position of employment but is able to engage in sustained remunerative employment. Therefore, it is the decision of the Staff Hearing Officer to deny the Permanent Total Disability application filed 06/21/2002. All the evidence, testimony, and arguments submitted as of the date of this hearing have been reviewed and evaluated to render this decision.
 {¶ 24} 12. On December 15, 2003, relator, Billy Duncan, filed this mandamus action.
Conclusions of Law:
 {¶ 25} Several issues are presented: (1) whether the commission abused its discretion by failing to explain why it did not rely upon the reports of Drs. Rao and Gomos; (2) whether Dr. Rosenberg's reports constitute some evidence upon which the commission can rely; (3) whether the commission abused its discretion in failing to consider relator's pre-existing COPD under the allowed conditions of the claim; and (4) whether the commission's treatment of the nonmedical factors violates Stateex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 26} The magistrate finds: (1) the commission did not abuse its discretion by failing to explain why it did not rely upon the reports of Drs. Rao and Gomos; (2) Dr. Rosenberg's reports do constitute some evidence upon which the commission can rely; (3) the commission did not abuse its discretion in failing to consider relator's pre-existing COPD under the allowed conditions of the claim; and (4) the commission's treatment of the nonmedical factors does not violate Noll.
 {¶ 27} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 28} The first issue is easily answered. The commission is not required to set forth the reasons for finding one report more persuasive than another. State ex rel. Bell v. Indus. Comm.
(1995), 72 Ohio St.3d 575, 577. A reviewing court is not aided by a recitation of evidence that was considered but not found persuasive. Id. There is a presumption of regularity that attaches to commission proceedings. State ex rel. Lovell v.Indus. Comm. (1996), 74 Ohio St.3d 250, 252.
 {¶ 29} The presumption here is that the commission considered the reports of Drs. Rao and Gomos but found them unpersuasive.Lovell. Thus, there was no abuse of discretion when the commission did not mention the reports in its order or explain why they were found not to be persuasive.
 {¶ 30} The second issue is also easily answered. Relator challenges Dr. Rosenberg's report as follows:
Dr. Rosenberg concurred with [Dr.] Weiner and adds the explanation that he believes the 1999 pulmonary function tests performed at University Hospital did not show restriction as everyone thinks, but rather showed obstruction. This is why he attributes Duncan's problems to COPD related obstruction rather than to silicosis related restriction. However, we contend [Dr.] Rosenberg's explanation is flawed for two reasons. First, he says the claimant did not blow hard enough into a breathing tube for [Dr.] Rosenberg to meet the standard for [Dr.] Rosenberg to obtain a good enough breathing test to obtain valid results. If patients lungs are bad enough sometime they simply cannot do it, but may be able to do so at a later time. Yet [Dr.] Rosenberg guesses at what the test result should have been anyway. Then he says because some TLC maneuver was not done at University Hospital along with the breathing tests in 1999, they are inaccurate and, thus support his own contention in 2002 that it was obstruction not restriction that the test results demonstrate, thus making his disability be caused by his smoking rather than his exposure to silica dust and asbestos fibers[.] * * *
(Relator's brief at 16.)
 {¶ 31} It is inappropriate for this court to entertain this type of argument in a mandamus action. To begin, this type of argument asks this court to second-guess the medical expertise of Dr. Rosenberg which this court should decline to do. See Stateex rel. Young v. Indus. Comm. (1997), 79 Ohio St.3d 484, 487. It is the commission, not this court, that weighs the medical evidence. Relator's argument, in essence, asks this court to reweigh the medical reports that the commission has already weighed.
 {¶ 32} Turning to the third issue, relator claims here that the commission abused its discretion by failing to consider his pre-existing nonallowed COPD condition under the allowed conditions of the claim. According to relator, COPD relates to that portion of the claim allowance "respiratory condition: external agent NOS." Relator's claim here lacks merit.
 {¶ 33} To begin, there is no indication in the record that relator asserted this claim before the commission. Issues not raised administratively cannot later be raised in mandamus.State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78.
 {¶ 34} Moreover, in connection with this claim, relator asserts in this action that the Ohio Bureau of Workers' Compensation ("bureau") granted the industrial claim allowance in an order dated October 26, 2001, based upon Dr. Weiner's reports of September 10 and October 1, 2001. Relator did not submit a copy of the alleged bureau order in the record before this court.
 {¶ 35} Nevertheless, even if the bureau did grant the industrial claim allowance based upon Dr. Weiner's reports as relator asserts here, a review of Dr. Weiner's reports does not support relator's contention that COPD was meant to be encompassed by the official description of the claim allowance. Accordingly, relator has failed to show an abuse of discretion with respect to the third issue.
 {¶ 36} The fourth issue, as previously noted, is whether the commission's treatment of the nonmedical factors violates Noll,
supra.
 {¶ 37} For its nonmedical analysis, the commission relied heavily upon the Stoeckel vocational report. The commission's order quotes large portions of the report which were found to be persuasive, but very little independent analysis from the commission's hearing officer is provided. The SHO's order summarizes the Stoeckel report in the second to last paragraph of the order as follows:
Based on the preponderance of the evidence the Staff Hearing Officer finds that Injured Worker is capable of competing in the labor market. The IC pulmonologist opined that Injured Worker is severely impaired but not from allowed condition in this claim. The BWC pulmonologist concurred. the IC vocational counselor determined that Injured Worker did have barriers to re-employment but indicated that the caused [sic] for the inability to be employed was the unrelated condition of COPD.
 {¶ 38} The commission is the expert on the nonmedical factors. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, 271. It is not critical or even necessary for the commission to credit offered vocational evidence. Id.
 {¶ 39} Here, the commission, through its SHO, chose to rely in large part upon Stoeckel's analysis. Thus, relator challenges the Stoeckel report in several respects. First, relator argues that Stoeckel's report is defective because Stoeckel did not evaluate the report of Dr. Gomos. However, because the commission did not rely upon Dr. Gomos' report, Stoeckel's nonassessment of Dr. Gomos' report is irrelevant.
 {¶ 40} Secondly, relator faults the Stoeckel report for the following response to Dr. Rao: "Unclear. Does not specifically address residual functional capacities."
 {¶ 41} According to relator, Stoeckel's comment regarding Dr. Rao's report is inaccurate because Dr. Rao stated in his December 15, 2002 report that "Mr. Duncan has Pulmonary Impairment Class IV, which is 51 to 100% impairment of whole person."
 {¶ 42} Given that Stoeckel completed her report on December 18, 2002, it is understandable that she would not have a copy of Dr. Rao's report dated December 15, 2002. However, even if it can be argued that Dr. Rao did venture an opinion relating to residual functional capacity, given that the commission did not rely upon Dr. Rao's reports, Stoeckel's report is not flawed for its failure to evaluate Dr. Rao's second report.
 {¶ 43} In short, relator's challenge to the Stoeckel report must fail. Likewise, relator's challenge to the commission's nonmedical analysis must also fail.
 {¶ 44} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE